[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, the foreclosing mortgagee, and the mortgagors move to disapprove the committee's sale, at public auction, of real property located at 333 Kate Downing Road, Plainfield, Connecticut, sold pursuant to the court's judgment of foreclosure by sale. The committee moves for approval of the sale.
The following facts are undisputed. On April 6, 1998, the court rendered an interlocutory judgment of foreclosure by sale. The sale was ordered to occur at noon, July 18, 1998, on the subject premises. The property had a fair market value of CT Page 1884 $164,000 on that date. The plaintiff's debt as of the judgment date was $118,947.37.
The representative of the plaintiff lost his way while traveling to the auction. The committee delayed commencement of the auction until around 12:07 PM. The bidding began at $80,000 and proceeded upward with multiple bidders participating. The final bid received was $115,000, and the winning bidder was Charter Oak Federal Credit Union (Charter Oak), a junior encumbrancer of the property.
Approximately ten minutes after the bidding concluded, the errant agent of the plaintiff arrived. The plaintiff was prepared to bid up to $127,816.07, The committee refused to reopen the bidding.
Additional costs for a new sale would be around $3,000.
The mortgagee and mortgagors argue that the sale ought to be disapproved because the tardiness of the plaintiffs bidder was inadvertent and the belated proposed bid is substantially higher than the final bid Charter Oak contends that because its bid was seventy percent of the fair market value, the auction involved other bidders who promptly appeared, and a new sale would entail additional expenses, the sale ought to be approved. The court agrees with Charter Oak.
A foreclosure auction is a forced sale, akin to a distress sale. Typically, the final bid is less than the fair market value because of this circumstance. A sales price which is seventy percent of the fair market value is fair and reasonable. A new sale would add at least $3000 in costs to the process as well as delaying the final resolution of the matter. A rejection of the sale would be unfair to those bidders who appeared on time and participated in the auction. It would be particularly prejudicial to Charter Oak who expended time and money and cast the final bid. The plaintiffs failure to participate was the fault of its own representative.
A decision to approve or disapprove a foreclosure sale involves an evaluation of the equities in the case. Balancing these equities, the court concludes that the sale ought to be approved. The court has the discretion to approve a sale despite the inadvertent tardiness of a bidder who would have offered a purchase price higher than otherwise obtained. Dime Savings BankCT Page 1885of New York v. Grisel, 36 Conn. App. 313, 320 (1994).
The facts of Dime Savings, supra, reversed on other grounds, were nearly identical to those in the present case. There, the debt was $139,728.72 and the final bid only $30,000. The belated bid would have been some $80,000 above that amount. Despite this substantial deficit, the Appellate Court held that the trial court had the discretion to approve the sale. Id., 321.
In the present case, the actual final bid, $115,000, and the proposed bid, $127,816.07, are significantly closer than the winning and proposed bids in the Dime Savings case, supra. The final bid here is a much greater percentage of the plaintiffs debt than in that case. In both the Dime Savings case, supra, and the present matter the mortgagors face greater exposure to a deficiency judgment by approval of the sale. This fact alone, however, fails to tip the scales against approval of the sale.Id.
The court approves the committee's sale and denies the motions for disapproval.
SFERRAZZA, J.